**UNITED STATES of America**

v.

**Marvin MANDEL et al.**

Cr. No. 75–0822.

United States District Court,
D. Maryland.

July 19, 1977.

Barnet D. Skolnik, Ron Liebman, Baltimore, Md., Daniel Hurson, for the Government.

Arnold M. Weiner, Baltimore, Md., for Marvin Mandel.

William G. Hundley, Washington, D. C., for W. Dale Hess.

Thomas C. Green, Washington, D. C., for Harry W. Rodgers, III.

Michael E. Marr, Baltimore, Md., for William A. Rodgers.

Norman P. Ramsey, Baltimore, Md., for Irvin Kovens.

Charles G. Bernstein, Federal Public Defender, Michael Schatzow, Asst. State Public Defender, William C. Brennan, Jr., College Park, Md., for Ernest N. Cory, Jr.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge, sitting by designation.

Defendant Mandel has proffered to the Court the testimony of Mrs. Dorothy Rodgers, wife of defendant William Rodgers. His attorneys have summarized part of Mrs. Rodgers' testimony as follows:

"Mrs. Rodgers would testify that she and her husband left Mr. Hollander's office in the company of Dale Hess and his wife. As they were walking to lunch, they continued to talk about the purchase of the racetrack and the secrecy of their act. In the course of the conversation, Mr. Hess, excited at the prospect of the new acquisition, exclaimed, in substance, that the Governor would be shocked if he were to learn that this group had purchased Marlboro. Mrs. Rodgers would also testify that, after lunch, while driving home, she participated in further discussion with her husband. Mrs. Rodgers would say that her husband instructed her that the acquisition to the racetrack was to remain a secret; that she was not to reveal it to anyone, including the Governor; and that the acquisition of inter-

ests in the track, by Mr. Hess and the Rodgers brothers was 'none of the Governor's business.' "

The Government objects to her proffered testimony wherein she would repeat statements made in her presence by defendant Hess and by her husband. The Government argues that this part of Mrs. Rodgers' testimony would be rank hearsay and is not admissible under any of the exceptions to the hearsay rule.

The initial question to be considered is what is Mandel trying to prove by this testimony. If he is trying to prove his own state of mind, the testimony would be inadmissible.[1] Only declarations made by Mandel would be relevant to his state of mind. If he is trying to prove Hess' or Rodgers' state of mind, then he should wait and let them prove their state of mind in their parts of the case.

However, if he is trying to prove the fact of concealment,[2] the fact that they were acting to conceal their interests from him, then he might make a different argument on the basis of *Mutual Life Insurance Company v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892).

The *Hillmon* case holds that statements made by a person of his intention to do an act in the future are admissible to show that he may have done the act in the future. *Hillmon* prohibits the admission of statements of facts remembered or believed to prove the facts remembered or believed. That is to say, a person's statements that he did something in the past are not admissible to prove that he did that something in the past.

*Hillmon* involved letters rather than oral statements. The court recognized that letters by the declarant showing what was on his mind are more trustworthy than testimony by some third party about what the declarant stated orally. Nevertheless, the

---

1. Thus, the testimony would not be competent to prove that Mandel would have been shocked to find out about their interests.

2. The hearsay statements strongly imply that Hess and Rodgers planned and intended to conceal their interests from Mandel.

court used language suggesting that whether the statements were oral or written did not control the legal issues involved:

"A man's state of mind or feeling can only be manifested to others by countenance, attitude or gesture, or by sounds or words, *spoken or written.* The nature of the fact to be proved is the same, and the evidence of its tokens is equally competent to prove it, whether expressed by aspect or conduct, by *voice or by pen.*" (emphasis added).

145 U.S. at 295, 12 S.Ct. at 912.

Rule 803(3) of the new rules of evidence preserves the basic *Hillmon* rule. The Advisory Committee's Note to the rule states:

"The rule of *Mutual Life Insurance Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892), allowing evidence of intention as tending to prove the doing of the act intended is, of course, left undisturbed."

■ The Government's brief contains only a cursory and conclusory analysis of Rule 803(3). The sole ground asserted for exclusion under Rule 803(3) is that the testimony refers to a fact remembered and is therefore inadmissible to prove the fact remembered. The Government's statement of the law is correct, as far as it goes. Rule 803(3) expressly excludes statements of facts remembered or believed to prove the fact remembered or believed. The rule is a sound one because, as the Advisory Committee observes, such a rule "is necessary to avoid virtual destruction of the hearsay rule."

The Government claims that the statements of Mrs. Rodgers pertain solely to past events. The statements, at least impliedly, refer to past, present and future events. Three separate inferences can be drawn from a statement which implies that Hess and Rodgers were keeping their ownership interests secret from Mandel:

(1) They entered into an agreement *in the past* to keep their interests secret.

(2) They were in the process of keeping the interests a secret *at the time* the statements were made.

(3) They intended to keep their interests secret *in the future.*

If the event occurs on a given date, at a given time, the question of whether the statement was made before or after the event may be determined without difficulty. The defendants contend that the event in question, concealment, took place over a period of many months and perhaps years.

The real issue in this case is not whether the statements refer to a past or future event. The precise issue is whether a statement that *impliedly* refers to past, present *and* future events runs afoul of Rule 803(3)'s prohibition against testimony about facts remembered to prove the facts remembered or believed. This is a difficult question of law that is not free from doubt.

This legal issue was considered by Judge Friendly in the Second Circuit case of *Annunziato v. United States,* 293 F.2d 373 (1961). *Annunziato* was the prosecution of a public official for accepting a bribe. The Government sought to prove that the defendant public official accepted a bribe from the president of a corporation. The president of the corporation was not a defendant, and thus his out-of-court statements were not admissible as admissions.

At trial, the son of the corporation president was permitted to testify that his father told him that he had, in the past, received a telephone call from the defendant in which the defendant asked for a bribe. The son further testified that he asked his father what he intended to do in the future, and the father told the son that he intended to send the money to the defendant.

The son's testimony combined hearsay statements by his father about both past and future events. The past event was his father's out-of-court statement that the defendant had called him (in the past) and asked him for a bribe. The future event was the father's out-of-court statement that he intended to pay the defendant the bribe (in the future). The Government introduced the hearsay statements of the father to prove that the father probably did fulfill his stated intention to pay the bribe to the defendant.

Judge Friendly held that the fact that a statement showing a plan or design to do something in the future was accompanied by a statement of a fact remembered (that the defendant had called him) did not render the testimony inadmissible.

It can be said that the rule of *Annunziato* applies to the present case for the following reasons. One implication of the statements made by Hess and Rodgers is that they had an agreement, entered into in the past, to conceal their interests from Mandel. Another implication of the statements is that they intended to keep their interests secret in the future. The reference to the past event, the agreement, is an explanation of why they intended to pursue a future course of conduct, that is, to keep the matter secret in the future. *Annunziato* holds that a reference to a past event does not automatically require exclusion when it was made simultaneously with a reference to a future course of conduct.

Weinstein has criticized *Annunziato*. He says:

"The difficulty with the conclusion in *Annunziato* is that the evidence was much more powerful and probative in looking backwards—to show that the defendant had requested the payment as a bribe—than in looking forward. The elephant of the past is pulled in by the tail of the future. None of these cases where past, present and future are intertwined in a statement are easy. In the ultimate analysis, it is the principles of Rule 403 that control.

"In any event, in *Annunziato* it would no longer be necessary to press the *Hillmon* doctrine so far. Under the subsequently adopted federal rules, such a statement of a past event might have been admissible, even if it stood alone, as a declaration against interest pursuant to Rule 804(b)(3), since the declarant father was dead by the time of trial; or pursuant to Rule 803(24), if the court was satisfied that sufficient guarantees of trustworthiness were present."

What Weinstein means by his statement that "in the ultimate analysis, the principles of Rule 403 control" is explained in another part of his treatise:

"However, if the judge finds that the statement was made in circumstances which do not negate the presence of a motive to misrepresent, and the inference to be drawn that the declarant acted in a particular way is highly prejudicial, the Court may exclude the statement pursuant to its discretion afforded by Rule 403 on the finding that the probative value of the statement is outweighed. In reaching this decision, the possibility of bad faith is but one factor for the judge to consider. He must weigh all the factors on both sides of the question—those affecting relevancy (such as the legitimacy of the inference from the statement of intent to act) and those dangers stemming from admission (as, for example, whether this is a civil or criminal case)."

If Weinstein is correct, the Court may exclude the testimony (or defer it until later) if the Court concludes that its probative value and weight are outweighed by the prejudice the admission of such statement will cause the Government.

If Annunziato is correct, it may be argued that the statement should be admitted without reference to the balancing test.

It should be noted, however, that in *Annunziato*, there were several compelling reasons for admitting the hearsay testimony that are not present in the *Mandel* case. First, there was a strong need for the testimony because the declarant, the father, was dead. However, Rule 803(3) provides that the admissibility of testimony under the rule does not depend on whether the declarant is available. Availability of the declarant is immaterial.

Second, the past event, the telephone call from the defendant to the father, occurred shortly before the father made the hearsay statements to his son. We do not know whether the defendants in *Mandel* made the alleged agreement a long time or a short time before the statements about it were allegedly made.

Third, the hearsay declarations of the father were against his interest. Judge Friendly could not hold that they were declarations against interest because before the new rules of evidence were enacted declarations against penal interest were not admissible. The new rules provide that a declaration against penal interest is admissible if the declarant is dead or otherwise unavailable. *See* Rule 804(b)(3), Fed.R. Evid.

Fourth, Judge Friendly had an alternative basis for admitting the testimony of the son about what his father told him. The father, although dead and not a defendant, was a co-conspirator, and the statements were made in the furtherance of and during the course of the conspiracy.

In the *Hillmon* and *Annunziato* cases, as well as the other cases cited by the defendant in his brief, there was a pressing need for the hearsay testimony. The need in the present case is absent, as presumably defendants Hess, Harry Rodgers and William Rodgers can and will testify of the alleged secrecy agreed upon by them.

The problem that gives the Court much concern is that if testimony of this character is received, it could open the door for widespread fabrication. This Court has tried many cases in which a defendant was charged with aiding and abetting the operation of a moonshine still. The usual defense in such a case is that the defendant was rabbit hunting when he happened to see the still and, through curiosity, planted himself nearby. Defendant will usually offer to bring forth witnesses who will say that he told them, either before he was found at the still or afterwards, that he was rabbit hunting. It is noted that the case of *Fields v. United States*, 221 F. 242, 244 (4th Cir. 1915), involved such self-serving statements made by an alleged moonshiner after he was arrested. Often these self-serving statements are concocted or fabricated.

What is said is certainly *not* intended to imply that the proposed testimony of Mrs. Rodgers is concocted, in any form or fashion. The thing uppermost in this Court's mind is the precedential effect of admitting this type of evidence when the need is not overwhelming.

Incidentally, the article about *res gestae* written by the late Professor Morgan (the Court's former evidence teacher), and cited by the defendants, deals with:

(1) An utterance which is an operative fact in combination with other utterances creates a legal relation and without which the legal relation would not exist. In those cases, the utterance is offered not for the purpose of proving its truth, but merely for the purpose of showing that it was made. As an example, in a breach of contract action a witness in behalf of the plaintiff tenders the words constituting the offer, the acceptance or the repudiation.

(2) Cases in which the utterance, regardless of its truth, has probative value on the question of the existence or non-existence of a material fact.

(3) Cases in which the operative effect of non-verbal conduct depends upon verbal conduct accompanying it.

(4) Cases in which the operative effect of non-verbal conduct depends upon the intent which accompanies it.

(5) Cases in which the utterance is a direct declaration of a presently existing mental condition, made naturally and without circumstances of suspicion.

(6) Cases in which the utterance is contemporaneous with a non-verbal act, independently admissible, relating to that act and throwing some light upon it.

(7) Utterance concerning a startling event by a declarant laboring under stress or excitement.

It is very doubtful that the alleged statements in the present case come within any of these classifications. *See*, Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae*, 31 Yale L.J. 229 (1922).

The Court is of the opinion that Judge Weinstein's criticism of the *Annunziato* case is well taken.

Accordingly, the Court holds that the testimony of Mrs. Rodgers as it relates to the statements made by her husband and by defendant Hess is not to be received into evidence at this time as the Court desires to hear more testimony in the case before a final decision is reached.